JOHN F. KELLEY AND AUGUSTINE B. REPETTO, PLAINTIFFS-APPELLANTS, v. WILLIAM J. RYAN, INCORPORATED, A CORPORATION, ETC., DEFENDANT-RESPONDENT.

Argued October 6, 1927—Decided January 18, 1928.

Before Justices PARKER, MINTURN and CAMPBELL.

For the plaintiffs, *August B. Repetto, William I. Garrison* and *Robert H. McCarter*.

For the defendant, *Cole & Cole*.

PER CURIAM.

This case was argued at considerable length by able counsel and several very interesting questions were presented, but as we conclude that there should be a new trial for the reasons

presently to be stated, we find it unnecessary to deal with the other aspects of the case.

The suit was upon a promissory note dated January 18th, 1926, for $75,000, purporting to have been signed by the defendant, William J. Ryan, Incorporated, in favor of the plaintiffs. The note was voluminous in its agreements and recitals, taking up over a page of close print in the state of the case. It was the result of a controversy between the parties and threats of a suit in Chancery, and accompanied a written agreement for the settlement of such threatened suit. One of the contested issues in the case was whether the agreement marked *Exhibit P-2*, and dated January 16th, 1926, which purported to deal with all the outstanding questions between the parties, was signed on Saturday, January 16th, or whether the negotiations were protracted until after midnight, and the agreement was signed on Sunday, the 17th. The trial judge laid hold of this question and charged the jury that if the contract was signed on Sunday it would be a void contract and the plaintiffs could not recover under it, and that the note in question was a part of that contract. The jury found a verdict for the defendant, and while there were other issues in the case, particularly that of alleged fraud on the part of Kelly in accepting commissions from parties whose interests were adverse to those of Ryan, nevertheless, as the verdict was a general one, we cannot tell but that the jury laid hold of the instructions of the court on the Sunday law as the basis of their verdict. If, therefore, these instructions were erroneous, the verdict ought not to stand.

We consider that they were erroneous. In signing the agreement and the note, Ryan was signing as representing the corporation of William J. Ryan, Incorporated, which was the party legally interested in the matter, and the party named as the maker of the note. It does not appear that the note itself was signed on either the 16th or 17th of January; in fact, the agreement which was signed on that Saturday night provides that the note shall bear date upon the execution and delivery of the assignment of certain bonds and mortgages, to wit, January 18th, 1926, which would be Monday; the

evidence shows, beyond peradventure, that after Ryan had executed the agreement in a preliminary way the matter was taken up at a meeting of the William J. Ryan, Incorporated, corporation, on February 1st, and that at that meeting it was "Resolved, that the agreement be and the same hereby is approved, and that this company proceed to execute the bond, mortgage, collateral note and assignment of the mortgage provided for in the said agreement, and do any and all other things necessary to perform said agreement of January 16th, 1926." The resolution further authorized the proper officers to execute such instruments and approve the form and substance of the papers as presented at the meeting. The mortgage, which was dated January 18th, was proved as the act of the corporation on February 1st. The note itself, dated January 18th, bears the signature of William J. Ryan personally, William J. Ryan, Incorporated, by William J. Ryan, president, attested by C. E. Manwaring, secretary, and was certainly executed after the mignight meeting of January 16th, 1917.

The defense clearly presents a case of an executory contract, perhaps signed and delivered on a Sunday, but voluntarily executed and carried out later on a secular day. We may assume for present purposes that the agreement, *Exhibit P-2*, was signed in the small hours of Sunday morning; nevertheless, on January 22d, Ryan's counsel, Mr. Schorr, writes to the plaintiff Repetto, who was acting as counsel for himself and Kelley, that the mortgage should contain a release clause, and that the collateral note should have written on its face that the note is given pursuant to the terms of the agreement and is subject to the provisions thereof; so that it is plain that neither the note nor the mortgage had been finally delivered. Then, as already stated, the note and mortgage were authorized at the corporate meeting on February 1st, and no doubt executed on that day.

Assuming, then, what is probably true, that the defendants at any time up to the meeting of February 1st and the delivery of the papers authorized at that meeting, could have repudiated the agreement of January 16th, 1917, on the

ground that is was made on a Sunday and could have refused to deliver either the note or the mortgage, nevertheless, they executed both of these papers, delivered them and got the benefit of the settlement which those papers were intended to secure. We think it was error to vitiate the note because of the mere fact that it was founded on an agreement which could have been repudiated but was not, and think that the case is within the reasoning of *Brewster* v. *Banta,* 66 *N. J. L.* 368, in which the original promise was vitiated because made on a Sunday, but held to support a new promise subsequently made on a secular day.

It is argued for the defendants that no exception to the charge on the Sunday law was prayed by the plaintiff. While this would be dispositive of the matter on an appeal, it is not dispositive of it on a rule to show cause as in the present case. For we have a line of cases holding that on a rule to show cause no exception is necessary. Recent instances are *Butler* v. *Hoboken Printing and Publishing Co.,* 73 *N. J. L.* 45; *Otis Elevator Co.* v. *Headley,* 81 *Id.* 173; *Clark* v. *Public Service Railway Co.,* 83 *Id.* 319. In a *per curiam* of this court in *Henny* v. *Public Service Railway Co.,* 2 *N. J. Mis. R.* 396, the rule was recognized but not followed, the court saying that the power should be used cautiously by the reviewing court and only in an unusual case. If this informal utterance of the court be taken as controlling, we, nevertheless, think the present is such an unusual case. The point goes to the root of the case; it does not appear to have been raised in the pleadings, but was treated by the court as a *ratio decidendi* to be sumitted to the jury.

In our judgment the interests of justice require that a new trial be had on all the issues, and that the issue of the Sunday law, if then raised and considered to be a controlling factor in the situation (which, so far as we can see at this time, it is not), should then be submitted to a jury as the basis of a special finding.